NEW CINGULAR WIRELESS
PSC, LLC, Plaintiff,

v.

CITY OF TALLAHASSEE, Defendant.

Case No. 4:11CV467–RH/WCS.

United States District Court,
N.D. Florida,
Tallahassee Division.

April 3, 2012.

---

Mary Doty Solik, Law Offices of John L. Di Masi PA, Orlando, FL, for Plaintiff.

Mohammad Omar Jazil, Danny Richard Stengle, Hopping Green & Sams PA, John Clark Davis, John C. Davis PA, Tallahassee, FL, for Defendant.

### ORDER GRANTING SUMMARY–JUDGMENT

ROBERT L. HINKLE, District Judge.

This case presents the issue whether the plaintiff New Cingular Wireless PSC, LLC—a provider of cellular-telephone service referred to in this order as "AT & T"—may build a cellular-telephone tower within the Benjamin's Run Planned Unit Development in the City of Tallahassee. After an evidentiary hearing, a state administrative law judge entered a recommended order in AT & T's favor. The judge concluded that AT & T met every requirement under the City's cell-tower ordinance and other zoning ordinances for placing a cell tower at this site. And the judge concluded that the PUD's governing document—referred to in this order as "the Narrative"—authorized the cell tower.

The City of Tallahassee Planning Commission accepted the administrative law judge's findings of fact but rejected the recommended decision. The Planning Commission denied AT & T's application for one reason only: it concluded the Narrative prohibits cell towers. This order upholds the Planning Commission decision.

The Telecommunications Act of 1996 retains a local government's authority "over decisions regarding the placement ... of personal wireless service facilities," including cell towers. 47 U.S.C. § 332(c)(7)(A). But the Act limits a local government's authority in two ways. First, local-government regulation cannot "prohibit or have the effect of prohibiting the provision of personal wireless services." *Id.* § 332(c)(7)(B)(i)(II); *see also id.* § 253(a). And second, a local government's denial of an application to place a cell tower must be "in writing and supported by substantial evidence contained in a written record." *Id.* § 332(c)(7)(B)(iii). A "person adversely affected" by a local government's denial of an application may file an action asserting a violation of the statute "in any court of competent jurisdiction." *Id.* § 332(c)(7)(B)(v). This is such an action. This court has jurisdiction of AT & T's federal claims under 28 U.S.C. § 1331 and would have supplemental jurisdiction of any attendant state-law claim.

The defendant is the City. Although it supported AT & T's application in the administrative hearing, it has now switched sides, supporting its Planning Commission's denial of the application. AT & T has moved for summary judgment. Both sides have agreed that the case may properly be resolved on the summary-judgment motion.

The sole issue is whether the Narrative prohibits cell towers. The City offers nothing else in opposition to the application and could not reasonably do so. The City's cell-tower ordinance and general zoning ordinances squarely allow placing a cell tower on this site, unless prohibited by the Narrative. And the administrative record is devoid of evidence that AT & T's proposed site is not in fact an appropriate site for a cell tower, so long as it is not prohibited by the Narrative. For its part,

AT & T makes no assertion that denying this application will "have the effect of prohibiting the provision of personal wireless services" in violation of § 332(c)(7)(B)(i)(II). Nor does AT & T assert that in Tallahassee a PUD narrative cannot ban cell towers; it asserts only that *this* PUD narrative does not do so. In short, the case turns entirely on the proper interpretation of the Narrative.

Less clear is whether the court should interpret the Narrative *de novo* or should defer to any extent to the Planning Commission. The substantive issue is one of law, not fact. But it is also an issue touching upon land-use matters ordinarily thought to be within the Planning Commission's expertise. And the Telecommunications Act suggests that the standard of review is the familiar "substantial evidence" standard. *Id.* § 332(c)(7)(B)(iii). Courts sometimes give deference to an agency under that standard not only on findings of fact but also on matters within the agency's expertise. Thus, for example, in long ago charting a new course on the meaning of "substantial evidence" in matters before the National Labor Relations Board, the Supreme Court said:

> The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses *or its informed judgment on matters within its special competence* or both.

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (emphasis added).

I need not determine whether I should give deference to the Planning Commission's decision. While the issue is close, I conclude that even on *de novo* review, the Narrative bans cell towers. The Narrative defines Benjamin's Run as "primarily a residential community." The Narrative sets aside areas not only for residential use but also for office and commercial use. But the Narrative limits the office and commercial uses to those that are explicitly identified in the Narrative:

> Each component within the PUD will delineate the general category of land use as residential, office, or commercial. Within each component, *permitted uses will be listed* by Standard Industrial Code number, where applicable, *or specify a definition* of other permitted uses not listed by SIC numbers.

Benjamin's Run Master Planned Unit Development Narrative, ECF No. 12–3 at 7 (emphasis added). The Narrative includes a list of 64 uses that are permitted within commercial areas, but the list does not include cell towers.

To be sure, the Narrative also limits uses in an office or commercial area to those allowed in the city's C–1 commercial zoning district. AT & T asserts that this means the Narrative affirmatively authorizes all uses that are permissible in the C1 zoning district, including cell towers. But that is an incorrect reading. By limiting uses in a commercial area to those authorized in the City's C–1 zoning district, the Narrative indicates that a use *not* authorized in the City's C–1 zoning district is not permitted in the PUD, but the Narrative does not indicate that every use that *is* authorized in the C–1 zoning district is also permitted in the PUD.

The Narrative's statement that in commercial areas "permitted uses will be listed" by standard industrial code or that a "definition" will be specified can mean only one thing: the Narrative authorizes a use in a commercial area only if the Narrative lists the use's standard industrial code or gives a definition of the use. The Narrative does not provide a code or definition for cell towers or refer to them in any way. AT & T notes that cell towers have no

standard industrial code, but that means only that the method by which the Narrative could have authorized cell towers was by providing a definition. It did not.

The Narrative does list as one of the 64 uses permitted uses in commercial areas, "Misc. bus & serv/not elsewhere listed." AT & T did not assert in the administrative hearing or before the Planning Commission that this included cell towers. Nor does it seem to. The Narrative authorizes office and commercial establishments of a kind that residents visit to obtain services. Indeed, providing convenience for residents seems to be the whole point of allowing office and commercial uses within the PUD. But residents have no reason to visit a cell tower. Reading "Misc. bus & serv/not elsewhere listed" to include cell towers would depart from the tenor of the entire list.

Another provision of the Narrative also supports the conclusion that a cell tower is not a permitted use. The Narrative says:

All electrical and telecommunications utilities shall be located underground, except for antennas which may be located on rooftops so long as the roof design screens any rooftop equipment from view from public rights of way. (Non–Residential)

Benjamin's Run Master Planned Unit Development Narrative, ECF No. 12–3 at 14. The provision addresses most obviously such things as telephone lines and the kind of antennas that sometimes are placed on rooftops. But a cell tower is a telecommunications utility if not also an antenna. And it would be at least curious to impose such strict limits on telephone lines and ordinary antennas while permitting cell towers.

AT & T asserts that the Narrative explicitly bans other uses, including roof signs and billboards, *see id.*, and that the Narrative also would have explicitly banned cell towers had that been the intent. But the Narrative allowed some signs, so it made sense to explicitly ban those that were not permitted. The Narrative did not allow anything like a cell tower. In any event, it seems likely that when the Narrative was adopted, cell towers were not consciously considered one way or the other. But the Narrative provided that permitted uses in commercial areas were only those that were listed or defined, that telecommunications utilities were to be underground, and that antennas could be located on rooftops only if screened from public view. The best reading of the Narrative is that cell towers are not permitted.

For these reasons,

IT IS ORDERED:

It is declared that the defendant City of Tallahassee acted within its lawful authority in denying the application of the plaintiff New Cingular Wireless PCS, LLC, for a permit to place a cellular tower within the Benjamin's Run Planned Unit Development. All other requests for relief are denied. The clerk must enter judgment setting out the declaration and must close the file.